**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SUN PROTECTION FACTORY, INC.**

        **Plaintiff,**

-vs-                                    **Case No.  6:04-cv-732-Orl-19KRS**

**TENDER CORPORATION**

        **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1.     Defendant Tender Corporation's Motion for Summary Judgment and Incorporated Memorandum of Law.  (Doc. No. 18, filed on June 1, 2005);

2.     Notice by Defendant Tender Corporation Re: Motion for Summary Judgment and Incorporated Memorandum of Law of Filing Affidavit of Jason Cartwright.  (Doc. No. 19, filed on June 1, 2005);

3.     Plaintiff Sun Protection Factory, Inc.'s Response in Opposition to Defendant Tender Corporation's Motion for Summary Judgment.  (Doc. No. 24, filed on July 5, 2005);

4.     Notice of Filing Affidavits and Attachments by Plaintiff Sun Protection Factory, Inc. in support of Response in Opposition to Defendant Tender Corporation's Motion for Summary Judgment.  (Doc. No. 25, filed on July 5, 2005);

5.     Defendant Tender Corporation's Motion to Strike Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.  (Doc. No. 26, filed on July 8, 2005);

6.     Plaintiff Sun Protection Factory, Inc.'s Response in Opposition to Defendant Tender

Corporation's Motion to Strike Plaintiff's Response in Opposition to Defendant's

Motion for Summary Judgment.  (Doc. No. 28, filed on August 22, 2005); and

7.     Defendant Tender Corporation's Request for Oral Argument.  (Doc. No. 22, filed on

June 6, 2005).

## Background

Tender Corporation ("Tender") manufactures and sells a variety of topical skin treatment

products to retailers who in turn advertise and sell Tender's product to consumers.  (Doc. No. 19,

"Affidavit of Jason Cartwright," ¶¶ 1,2).  One of these products is a sunburn treatment skin gel that

uses the trademark "Afterburn."  (*Id.* at ¶ 2).  While Tender previously owned the Afterburn

trademark, it allowed the registration to lapse which gave Sun Protection Factory, Inc. ("Sun

Protection") the opportunity to acquire the mark.  (*Id.* at ¶ 2) (Doc. No. 25, Ex. 8, "Affidavit of Dan

Knorr," ¶ 2).  A dispute arose between Sun Protection and Tender regarding the use of the trademark

which led to the execution of a settlement agreement on February 19, 2001.  (Doc. No. 25, "Affidavit

of Jason Cartwright," ¶ 2).

According to the terms of the settlement agreement, Sun Protection granted to Tender a non-

exclusive license to use the trademark on packaging, labeling, advertising and other promotional

materials for its aloe gel and spray burn remedial products.  (Doc. No. 25, Ex. 1, "Settlement

Agreement," ¶ 2).  The Afterburn mark could not be more than 12 percent larger than the other marks

or terms on Tender's materials and had to be used in close proximity to a distinctive trademark such as

"Tender."  (*Id.*)  Tender agreed that it would not use the Afterburn mark on any products or services

other than the aloe gel and spray burn remedial products it produced.  (*Id.*)

Tender agreed to discontinue the use of any packaging, labeling, advertising, and other promotional materials annexed as Exhibits B and C to the settlement agreement upon depleting the current stock of packaging, but in any event the use of the packaging and material would not extend beyond August 31, 2001.[1]  (*Id.* at ¶3).  Sun Protection agreed to extend the August 31, 2001 deadline to allow Tender to dispose of 240,000 sachets of stock exhibiting the labeling contained in Exhibit C. (*Id.*)  Prior to August 31, 2001, Tender had no obligation to request or require any third parties, such as vendors, to stop using Exhibits B and C packaging, labeling, and advertising.  (*Id.*)

In the event that a third party committed a breach that, if committed by Tender, would have substantially breached the settlement agreement, Sun Protection could provide notice to Tender by certified mail of the name and address of the third party and the specific act deemed objectionable. (*Id.* at ¶ 7).  Tender then had thirty days from the receipt of the notice to send notice to the third party, with a copy to Sun Protection, that the third party is misusing the trademark.  (*Id.*) Tender was required to  make best efforts to cause the third party to stop misusing the trademark.  (*Id.*)  If Tender failed to send such notice, Sun Protection would notify Tender of its failure to send such notice, and upon receipt, the license granted to Tender would automatically terminate.  (*Id.*)  In the event of a substantial breach of the settlement agreement by Tender, the license would automatically terminate.[2]  (*Id.*)

---

[1] Exhibit B contains promotional labels that contain the Afterburn trademark, but the mark is not located near a descriptive term.  (Doc. No. 25, Ex, 1, "Settlement Agreement," Ex. B to Settlement Agreement).  Exhibit C is a promotional label with the Afterburn trademark that is located in closer proximity to another descriptive term.  (Doc. No. 25, Ex. 1, "Settlement Agreement," Ex. C to Settlement Agreement).

[2] The exact language of paragraph 7 states:

In the event that a third party commits an act that, if committed by Tender, would have substantially breached this agreement, Sun Protection shall provide notice to Tender by certified mail of the name and address of the third party and of the specific act deemed to

Jason Cartwright, President of Tender, testified by affidavit that promotional materials exhibiting the language contained in Exhibit B to the settlement agreement were not sold beyond August 31, 2001. (Doc. No. 19, "Affidavit of Jason Cartwright," ¶ 5). After the execution of the settlement agreement, Cartwright averred that Tender's Afterburn was sold in conformance with the settlement agreement. (*Id.*) Cartwright stated that written materials generated by Tender were also in conformance with the settlement agreement, with one exception. (*Id.*) That exception occurred in statistical information available to Tender's sales representatives to distribute to retailers but not to the public. (*Id.* at ¶ 7). If the materials were distributed, they would be given to retailers by a clearly identified Tender sales representative in the context of promoting Tender's products.[3] (*Id.*)

Cartwright stated that within a year following the execution of the settlement agreement, Sun Protection, through its representative Dan Knorr, began complaining of what it perceived to be violations of the settlement agreement. (*Id.* at ¶ 8). Cartwright testified that these alleged violations generally concerned retailers' actions, and not one of these retailers was under Tender's formal

---

be objectionable. Tender shall have thirty (30) days from receipt thereof to send notice to such third party, with a copy to Sun Protection that such third party is misusing the trademark and shall make its best effort to cause such third party to cease the misuse of the trademark. In the event that Tender does not send such notice to such third party, Sun Protection shall notify Tender of its failure to send such notice and, upon receipt, the license granted herein shall automatically terminate, and all right, title and interest in and to the AFTER BURN or AFTERBURN mark, as well as the right to use the mark shall lie solely with Sun Protection. All notices and correspondence pursuant to this paragraph shall be sent by certified mail, return receipt (or by private courier, such as Federal Express, employing means to track and record delivery).

(Doc. No. 25, Ex. 1, "Settlement Agreement," ¶ 7).

[3] The statistical and graphical information analyzed sales of Tender's Afterburn, but the Afterburn mark was not preceded by a descriptive mark such as "Tender." (*See* Doc. No. 19, Ex. D, "Statistical Information").

-4-

control.  (*Id.*)  Cartwright was aware of one occasion in which Sun Protection provided notice of supposed third party violations by certified mail.  (*Id.* at ¶ 9).  Cartwright testified that Sun Protection was concerned with a violation over the internet by an organization known as "Consumer Link" and averred that Tender notified Consumer Link of the problem.  (*Id.*)

On October 24, 2002, Knorr sent Cartwright an e-mail stating that he would e-mail Cartwright regarding "deviations" and appreciated Cartwright's assistance in watching for violations by others in their use of the Afterburn mark.  (Doc. No. 29, Ex. F).  Cartwright testified that he never agreed to this manner of notification, nor did he agree that he would watch for the violations of others.  (Doc. No. 19, "Affidavit of Jason Cartwright," ¶ 10).

Cartwright testified that to avoid what he viewed as harassment by Knorr, he took several steps to appease Knorr.  (*Id.* at ¶ 11).  He sent a letter to third party distributors of Tender's Afterburn to inform them of the proper use of the Afterburn trademark.  (*Id.*)  Furthermore, Tender voluntarily searched the internet for possible third party violations and attempted to ensure the proper use of the Tender Afterburn name.  (*Id.* at ¶ 12).  Despite Cartwright's best efforts, Knorr did not appear to be satisfied.  (*Id.* at ¶ 13).  Knorr called Cartwright regarding fifty violations he found on the internet. (*Id.*)  When Cartwright pressed Knorr for details, Cartwright was told to conduct the searches himself. (*Id.*)

Cartwright testified that Knorr provided him with the address of an allegedly offending party and specific materials demonstrating the violation on only one occasion.  (*Id.* at ¶ 14).  Without such materials, Cartwright was unable to contact the alleged violators to rectify the situation.  (*Id.*) Cartwright stated that Sun Protection did not notify Tender of its failure to send notice to third parties via certified mail or federal express.  (*Id.* at ¶ 17).

In contrast, Dan Knorr, President of Sun Protection, testified by affidavit that Sun Protection's relationship with Tender turned sour when it became evident that third parties were flagrantly using the prohibited advertising materials after the August 31, 2001 deadline.  (Doc. No. 25, Ex. A, "Affidavit of Dan Knorr," filed on July 5, 2005, ¶ 4).  Because Sun Protection anticipated that third party advertising would be an infringement problem, Sun Protection created a process whereby it would provide notice to Tender of third party violations and Tender would send notices to third party misusers as well as be obligated to use "best efforts" to cease third party misuse of the trademark pursuant to Section 7 of the settlement agreement.  (*Id.* at ¶ 3).

Knorr further testified that as a result of rampant misuse of the Afterburn trademark, on October 10, 2002, Sun Protection issued notice to Cartwright by certified mail requesting Tender to send notices to various infringing vendors and demand that they stop misusing the mark.  (*Id.* at ¶ 6).  The October 10, 2002 letter stated that Knorr did not feel that Tender had made a satisfactory effort to correct the violations within the intent of the settlement agreement.  (Doc. No. 25, Ex. 2, "October 10, 2002 Letter").  Knorr also listed dyersonline, clorders, youzigg, and yahoo.com as representative web addresses that violated the settlement agreement by using old artwork and by failing to use a descriptive term with the Afterburn trademark.  (*Id.*)  Knorr informed Cartwright that Tender had thirty days to send a certified letter to those in violation asking them to change the violations to comply with the settlement agreement.  (*Id.*)  Knorr also wrote that if Sun Protection did not receive a suitable remedy within thirty days, he would forward the matter to the company's Florida attorney and inform him that a breach of the settlement agreement had occurred and that the license should be terminated. (*Id.*)

Knorr testified that Tender failed to take any action in response to the letter, failed to send

copies to Sun Protection confirming that notices were sent, and failed to employ "best efforts" to cease the third party misuses.  (Doc. No. 25, Ex. 8, "Affidavit of Dan Knorr," ¶ 6).  Knorr stated that notice of termination of the settlement agreement was sent to Tender by certified mail.  (*Id.* at ¶ 7).  Finally, Knorr averred that two of the complained of vendors, clorders and yahoo, still use Tender's infringing advertisements.  (*Id.*)

On May 17, 2004, Plaintiff Sun Protection Factory, Inc. filed a complaint against Defendant Tender Corporation alleging in five counts breach of contract, federal trademark infringement, deceptive and unfair trade practices under Florida law, common law unfair competition, and dilution and injury to business reputation.  (Doc. No. 1).  On June 1, 2005, Defendant Tender Corporation filed a Motion for Summary Judgment, arguing that Tender did not violate the settlement agreement, that Sun Protection failed to provide adequate notice to trigger termination of the settlement agreement, and that Sun Protection cannot show likelihood of confusion or satisfy the elements of trademark infringement.  On July 5, 2005, Plaintiff Sun Protection Factory, Inc. filed a response to Defendant Tender Corporation's Motion for Summary Judgment.  (Doc. No. 24).  Sun Protection enclosed several exhibits and affidavits in support of its response, including the affidavits of Dan Knorr, Scott Crites, Judith Bell, and Janet Locke.

On July 8, 2005, Defendant Tender Corporation filed a Motion to Strike Sun Protection's response in opposition to its Motion for Summary Judgment.  (Doc. No. 26).  Tender claims that Sun Protection's response was not timely filed, that numerous documents are unattested, that Knorr's affidavit contains hearsay statements, and that the other affidavits are conclusory.

This Order analyzes Defendant Tender Corporation's Motion to Strike and Motion for Summary Judgment.

## 1. **Motion to Strike**

While Tender's Motion to Strike raises several arguments regarding the evidentiary deficiencies in the record, Tender also replies to Sun Protection's arguments in opposition to its Motion for Summary Judgment.  Local Rule 3.01(b) states that "[n]o other briefs or legal memoranda directed to any such written motion shall be filed or served by any party unless requested by the Court."  Tender has not received permission from the Court to file a reply to Sun Protection's opposition memorandum.  Therefore, to the extent that Tender's brief is an unauthorized reply to Sun Protection's response, the Court denies the Motion to Strike and will not consider the unauthorized pleading.

Tender raises several arguments addressing the timeliness of Sun Protection's brief and the admissibility of the evidence that Sun Protection submitted in opposition to Tender's Motion for Summary Judgment.  The Court will address each of these arguments in turn.

### a. Tender's Argument that Sun Protection's Opposition Brief was Untimely Filed

Tender's first contention is that Sun Protection's opposition memorandum should be stricken in its entirely because it was untimely filed.  On June 1, 2005, Tender filed its Motion for Summary Judgment.  According to the Case Management and Scheduling Order, each party opposing summary judgment has thirty days after being served with such motion to file a legal memorandum in opposition.  (Doc. No. 15, filed on August 27, 2004).  The date for thirty days after June 1, 2005 is July 1, 2005.  On July 5, 2005, Sun Protection filed its response to Tender's Motion for Summary Judgment.  Thus, Sun Protection's response was filed untimely.

Sun Protection does not dispute that its response was untimely filed.  However, Sun Protection argues that the Court should apply the excusable neglect standard and allow the response to remain as

part of the record.

In *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 849-50 (11th Cir. 1996), the Eleventh Circuit interpreted Supreme Court case law to define the meaning of excusable neglect. Citing *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the appellate court explained that the Supreme Court reviewed the meaning of excusable neglect in the context of rules that allow for late filings. *Id.* at 850. The appellate court explained that excusable neglect encompasses situations in which the failure to comply with a filing deadline is attributable to negligence. *Id.* (internal citation and quotations omitted). The determination of whether there is excusable neglect in failing to meet a deadline is an equitable consideration that turns on all relevant factors surrounding the omission. *Id.* (internal citation omitted). The factors that courts consider include the "'danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Id.* (citing *Pioneer*, 507 U.S. at 395). In *Pioneer*, the Supreme Court accorded "primary importance" to the lack of prejudice to the nonmoving party and the interest of efficient judicial administration. *Id.*

Applying the first factor, Tender has not shown that a four day delay has caused it any prejudice. Second, the untimely response has not impacted the judicial proceedings insofar as this case remains set for the November trial calendar. Third, Sun Protection's reason for delay is that its counsel had acquired a new computer and was in the process of transferring files and software to the new system. As a result of problems beyond counsel's control, counsel was unable to access the opposition memorandum and was unable to secure technical assistance over the Fourth of July holiday weekend. While Sun Protection's counsel should have secured the opposition memorandum prior to

transferring files to a new computer system, the reason advanced for the delay, especially given the lack of prejudice to Tender and the interest in expedient judicial administration, does not outweigh the other factors.  Examining the fourth factor, the reason for the delayed filing was due to technical issues associated with a new computer system.  While the circumstances surrounding the error were within the control of counsel in the sense that the memorandum could have been secured prior to the attempted file transfer, counsel's actions amount only to an "omission [] caused by carelessness." *Cheney*, 71 F.3d at 850 (internal citation and quotations omitted).  Thus, it cannot be said that the untimely filing of Sun Protection's counsel is an act of flagrantly disregarding the Rules of Court. Because the balancing of the factors delineated in *Pioneer* weighs in favor of Sun Protection, the Court finds that the failure to timely comply with the filing deadline is excusable neglect.

### b. Tender's Argument that Exhibit 3 was not Authenticated

Tender's second argument in favor of its Motion to Strike is that Sun Protection's exhibit 3 attached to its response in opposition to Tender's Motion for Summary Judgment is unauthenticated and should be stricken from the record.  (*See* Doc. No. 25, "Notice of Filing Affidavits & Attachments by Sun Protection Factory, Inc. in Support of Response in Opposition to Tender Corporation's Motion for Summary Judgment," Ex. 3).  Sun Protection counters that Exhibit 3 is incorporated by reference into Knorr's affidavit.  Exhibit 3 is a series of internet websites including yahoo.com, clorders.com, and enlmedical.com that reference Afterburn skin products.  The dates on the websites are June 2, 2005 and June 15, 2005.

Sun Protection has failed to cite a basis for the Court to find that it has authenticated Exhibit 3. Knorr testified that customers complained that certain websites used prohibited advertising, but Knorr did not testify that he actually viewed the websites.  Thus, he has not been shown to be competent to

make this statement.  Because the websites were not properly authenticated and Knorr's statement as to the websites in Exhibit 3 is hearsay, the websites will not be considered by the Court when analyzing Defendant's Motion for Summary Judgment.[4]

### c. Tender's Argument that Exhibits 5,6, and 7 are Conclusory Affidavits

Tender claims that Exhibits 5,6, and 7 attached to Sun Protection's response in opposition to Tender's Motion for Summary Judgment contain conclusory statements without specific supporting facts and that such affidavits cannot be considered by the Court.

Exhibits 5, 6, and 7 are the affidavits of Scott Crites, President of Southern Sales, Judith Bell, owner and President of Robell Drugs Limited, and Janet Locke, owner and President of Collections Unlimited.  Southern Sales, Robell Drugs Limited, and Collections Unlimited are sellers and distributors in the sun care industry and have been purchasing products from Sun Protection for over ten years.  (Doc. No. 25, Ex. 5, "Affidavit of Scott Crites," ¶¶ 1,2) (Doc. No. 25, Ex. 6, "Affidavit of Judith Bell," ¶¶ 1,2) (Doc. No. 25, Ex. 7, "Affidavit of Janet Locke," ¶¶1, 2).  Each affiant stated that he or she found several instances in which the affiant's company as well as the company's wholesale customers, retailers and consumers have been confused into buying Tender's Afterburn products believing them to be Sun's Afterburn products.  (Doc. No. 25, Ex. 5, "Affidavit of Scott Crites," ¶ 3) (Doc. No. 25, Ex. 6, "Affidavit of Judith Bell," ¶ 3) (Doc. No. 25, Ex. 7, "Affidavit of Janet Locke," ¶ 3).

---

[4] The websites are not self-authenticating.  *See, e.g., In re Homestore.com, Inc. Sec. Litig.*, 347 F.Supp. 2d 769, 782 (C.D. Cal. 2004) ("Printouts from a website do not bear the indicia of reliability demanded for other self-authenticating documents under FED. R. EVID. 902.").  The websites are very similar to Exhibit B attached to the settlement agreement.  The parties agreed that advertising exhibiting labels similar to Exhibit B would not be used after August 31, 2001.  Sun Protection has not demonstrated that these websites were accessed after August 31, 2001 and has not linked the websites to Tender.

Sun Protections proffers the Crites, Bell, and Locke affidavits in order to demonstrate a genuine issue of material fact on the issue of actual confusion which is part of the trademark infringement analysis. *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 486 (11th Cir. 2004) (internal citations omitted).

A party that resists summary judgment must "meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also* FED. R. CIV. P. 56(e). At the summary judgment stage, conclusory allegations without specific supporting facts lack probative value and cannot be considered by the Court. *Gordon v. Terry*, 684 F.2d 736, 743-44 (11th Cir. 1982) ("[b]are assertions that the defendants "conspired," "controlled," or retained Green as their "agent" are insufficient to create an issue as to [plaintiff's] dependency on these defendants or to demonstrate the sort of relationship between the defendants and Green which would create a question as to imputed knowledge or responsibility"), *cert. denied*, 459 U.S. 1203 (1983); *see also Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (explaining that a brief, conclusory assertion of trademark usage was not enough to meet the plaintiff's burden of proving that he had trademark rights in the photograph before the release of the defendants's movie).

Exhibits 5,6, and 7 are conclusory affidavits that fail to specify factually exactly how each company and its customers were confused regarding the source of the skin care products. Because the affiants fail to recount any details to support their allegations, the Court finds that the affidavits are conclusory and fail to comport with Eleventh Circuit caselaw on admissible evidence at the summary

judgment stage.  Thus, the portion of the affidavits relating to the confusion experienced by the affiants, their companies, and their customers will not be considered in analyzing Tender's Motion for Summary Judgment.

### d. Tender's Argument that Dan Knorr's Affidavit Should be Stricken Because it is Based on Hearsay

Tender claims that Dan Knorr's affidavit is not based on personal knowledge and constitutes hearsay.  Sun Protection counters that Knorr's testimony is based on acts, not statements.

Paragraph 8 of Knorr's affidavit specifically addresses the issue of confusion regarding the source of the skin care products.  Knorr testified that Tender's misuse of the trademark caused confusion among Sun Protection's consumers in the form of mistaken orders, sales, and phone calls. (Doc. No. 25, Ex. 8, " ¶ 4).  Knorr stated that the customers said that when they used search terms such as "Afterburn Spray" or "Afterburn Gel" in the Google search engine, they came across websites that used the prohibited advertising.  (*Id.*)  Because the old advertising was not distinctive, Knorr testified that customers purchased Tender's Afterburn products believing them to be from Sun Protection.  (*Id.*)

Sun Protection proffers Knorr's testimony in order to demonstrate actual confusion.  This testimony presents a hearsay problem that courts have analyzed in different ways.  Some circuits have found witness testimony on the issue of actual confusion to be unreliable hearsay while other circuits have found such statements to be admissible on the basis that the statements are not offered for the truth of the matters asserted.  *Vitek Systems, Inc. v. Abbott Laboratories*, 675 F.2d 190, 193 (8th Cir. 1982), and *Duluth News-Tribune v. Mesabi Publishing Company*, 84 F.3d 1093, 1098 (8th Cir. 1996), are demonstrative of courts' hesitancy to admit witness testimony on the issue of actual confusion due to hearsay concerns while *Lyons Partnership, L.P. v. Morris Costumes Incorporated*, 243 F.3d 789, 804 (4th Cir. 2001), and *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003-04

-13-

(2d Cir. 1997), demonstrate courts' willingness to find such testimony admissible under a hearsay exception.

In *Vitek Systems*, the Eighth Circuit found that the testimony of plaintiff's employees that customers had told them that they were confused by the similarity of the marks was hearsay in nature and therefore inadmissible and that the district court could refuse to credit uncorroborated testimony of interested persons.  675 F.2d at 193.  In *Duluth News-Tribune*, the Eighth Circuit found that vague evidence of misdirected phone calls and mails was "hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'"  84 F.3d at 1098  (internal citations omitted).  In *Lyons Partnership*, the Fourth Circuit held that the statements of "Barney, Barney, Barney" by school children in response to seeing the defendant's costume at a school rally and newspaper clippings that mistook the defendant's costume for the plaintiff's costume were admissible to prove actual confusion because the plaintiff did not offer the statements for the truth of the matters asserted, i.e., that the persons wearing the defendant's costume were in fact Barney.  243 F.3d at 804.  Rather, the statements were offered to prove that the children and newspaper reporters expressed their belief that those persons were Barney.  *Id.*  In *Fun-Damental Too*, the Second Circuit held admissible on the issue of actual confusion the testimony of the plaintiff's national sales manager that retailers complained that the plaintiff was selling its product at a lower price to other retailers, reasoning that Federal Rule of Evidence 803(3) allows statements, otherwise excluded as hearsay to be received to show the declarant's then-existing state of mind.  111 F.3d at 1003-04.

Sun Protection argues that Knorr's testimony is admissible because his testimony fits within the business records exception to the hearsay rule and because Knorr testifies to acts rather than

statements.

Rule 803(6), the business records exception to the hearsay rule, provides that a memorandum or report that describes acts, events, conditions, opinions, or diagnoses that is made at or near the time of the event by, or from information transmitted by, a person with knowledge, if kept in the ordinary course of business activity and if it was the regular practice of the business to keep the report is admissible. FED. R. EVID. 803(6). Rule 803(6) does not apply because Knorr's affidavit is not shown to be a business record and appears to have been created in response to the Defendant's Motion for Summary Judgment, or at least this litigation.

Even more importantly, Knorr's testimony does not appear to be admissible under other exceptions to the hearsay rule. For instance, Rule 803(1) provides that a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is admissible as an exception to the hearsay rule. FED. R. EVID. 803(1). Rule 803(1) does not apply in the instant case because it is not clear from Knorr's testimony whether customers made a statement to him while purchasing or immediately after purchasing a skin care product.

Analyzing the hearsay problem in light of *Vitek Systems*, *Duluth News-Tribune*, *Lyons Partnership*, and *Fun-Damental Too*, Knorr's testimony may carry the same degree of unreliability as the testimony in *Vitek Systems* and *Duluth News-Tribune*. Knorr testified that because the old advertising was not distinctive, the customers purchased Tender's Afterburn products believing these products to be from Sun Protection. In order words, it may be the case that customers told Knorr that they were confused as to the source of the product. Such direct testimony as to state of mind would constitute inadmissible hearsay.

-15-

On the other hand, it is not apparent to the Court whether customers told Sun Protection that they were confused as to the source of the product, which is a direct statement of mind that would be inadmissible hearsay, or whether Sun Protection received consumer complaints that merely demonstrated confusion, such as, for example, a complaint regarding a problem with the product that the customer perceived to be produced by Sun Protection but was actually produced by Tender.

The latter statement would be admissible because Knorr may make statements of customer confusion in order to demonstrate that the complaints were made.  *See Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 719 (3d Cir. 2004) (explaining that statement of "We have plenty of Advicor" while the individual points to Altocor is not hearsay because the statement is not submitted for the truth of the matter asserted).  Because Sun Protection is the nonmoving party and the Court draws all reasonable inferences in favor of the nonmoving party at the summary judgment stage, the Court finds that Knorr's testimony in paragraph 8 is admissible to demonstrate that customers complained of confusion.

While Tender requests the Court to strike Knorr's affidavit on the grounds that the relevant portions are based on hearsay, lack specific factual detail, and are not based upon personal knowledge, Tender has not demonstrated how Knorr's statement that yahoo and clorders still use infringing advertisements is inadmissible.  Because Tender has not demonstrated that Knorr is not competent to make such a statement, Knorr's statement in paragraph 7 of the affidavit that yahoo and clorders are still using infringing advertisements is admissible.

Therefore the Motion to Strike is Granted in Part and Denied in Part in accordance with this Order.

### 2. **Motion for Summary Judgment**

### *a. Standard of Review*

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the Court must not grant summary judgment. Id. (citation omitted)

### *b. Analysis*

### *(1.) Tender's Argument that it did not Violate the Settlement Agreement*

Tender claims that it is entitled to summary judgment because there is no evidence demonstrating that it violated the settlement agreement. Tender argues that any print media or advertising was in a form that complied with the settlement agreement and displayed the name Tender in immediate proximity to the Afterburn mark. In support of its argument, Tender cites Cartwright's affidavit which avers that Tender did not sell any products under the labeling in Exhibit B to the

settlement agreement after August 31, 2001 and that Tender's Afterburn was sold under labeling that used the term Tender in conjunction with the Afterburn mark.

However, Tender concedes that there is a colorable argument in support of its breach of the settlement agreement insofar as Tender used the Afterburn mark in compiling statistical and graphical information that was provided to retailers.  This information compared sales of Afterburn to other products.  Cartwright testified that clearly identified Tender sales representatives would distribute the information.  Because the statistical and graphical information was not an advertisement and was not disseminated to the public, Tender argues there is no confusion as to the origin of the skin care products and that it did not materially breach the settlement agreement.

The settlement agreement carves out several exceptions regarding the use of the Afterburn mark.  Tender agreed to discontinue the use and distribution of the packaging, labeling, advertising and other promotional materials annexed to the settlement agreement as Exhibits B and C.  Tender was permitted to sell skin care products containing advertisements in Exhibit B attached to the settlement agreement until August 31, 2001.  In the case of skin care products containing advertisements in Exhibit C attached to the settlement agreement, Tender was permitted to go beyond the August 31, 2001 deadline in order to sell 240,000 sachets of stock.

There is no provision in the settlement agreement that carves out an exception for statistical or graphical information.  Furthermore, the settlement agreement prohibits the use of labeling and advertising that utilizes the Afterburn mark without the descriptive term Tender.  Finally, Tender's customers are retailers.

At the summary judgment stage, the Court construes all reasonable inferences in favor of the non-moving party.  At this juncture, it cannot be said that the use of the Afterburn mark on statistical

and graphical information does not violate the settlement agreement's prohibition on the use of

labeling or advertising that uses the Afterburn mark without the descriptive term Tender. Therefore,

the Court finds that based on the instant record it cannot be said that there is no genuine issue of

material fact as to whether Tender's use of the Afterburn mark on the statistical and graphical

information materially breached the settlement agreement.

### 2. Tender's Argument that to the Extent that a Third Party Violated the Settlement Agreement, Sun Protection Failed to Provide Adequate Notice to Trigger Termination of the Settlement Agreement

Tender claims that Sun Protection failed to notify it that third parties were violating the

settlement agreement. Without proper notification, Tender contends that it has not breached the

settlement agreement. Sun Protection counters that the record is clear that the infringing

advertisements were generated at the behest of Tender and that Sun Protection's October 10, 2002

letter provided sufficient notice.

There is no evidence in the record demonstrating that Tender worked in concert with retailers

to generate infringing advertisements. Because Sun Protection has not proffered any evidence to

support this assertion, the Court finds that this argument is without merit.

The record reflects that on October 10, 2002, Knorr sent a letter to Cartwright by certified mail.

In the letter, Knorr explained "flagrant violations" of the settlement agreement by dyersonline,

clorders, youzigg, and yahoo.com and explained that these websites violated the settlement agreement

by using old artwork and by failing to use the name Tender or Family Medic with the Afterburn mark.

Furthermore, Knorr testified by affidavit that clorders and yahoo were still using the infringing

advertisements as of the date of the affidavit, March 4, 2005.

Paragraph 7 of the settlement agreement requires Sun Protection to notify Tender of any third

party breaches by certified mail. The notice must include the name and address of the third party as

-19-

well as the specific act deemed to be objectionable.

It is clear that the October 10, 2002 letter, which was sent by certified mail, comports with paragraph 7 of the settlement agreement by explaining the nature of the violations and the name of the violators.  Thus, the issue before the Court is the meaning of the term "address" contained in the settlement agreement.  This is an issue on which the parties have failed to develop argument in the briefs they submitted to the Court.

The Court approaches this question by looking to the basic rules of contact construction. Under Florida law, where the language of an agreement is clear, the legal implication of the language is a question of law and may be declared by the Court.  *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1439 (11th Cir. 1996) (citing *Smith v. State Farm Mutual Automobile Ins. Co.*, 231 So.2d 193, 194 (Fla. 1970)).  If a contractual term could be interpreted in more than one manner, the meaning of the term creates a jury question.  *Id.*  (citing *Hoffman v. Terry*, 397 So.2d 1184 (Fla. 3d DCA 1981)).  The initial issue of whether or not a contractual term is ambiguous is a question of law.  *Id.* (citing *Orkin Exterm. Co. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir. 1988)).

On the one hand, the "address" of a third party may be interpreted to mean the mailing address of the party.  This interpretation is plausible in light of the fact that the "name" of the third party in paragraph 7 is distinct from the address.  On the other hand, the "address" may be interpreted to mean the web address of the third party.  Because there are two possible interpretations of the word "address," the word "address" in Paragraph 7 of the settlement agreement appears to be ambiguous.

Based on this record because there is a genuine issue of material fact as to the meaning of the word "address," this issue cannot be resolved on a motion for summary judgment.

### 3. Tender's Argument that Sun Protection Cannot Show Likelihood of Confusion or Satisfy Elements of Trademark Infringement

-20-

In order to prevail on a trademark infringement claim, a plaintiff must demonstrate that the defendant's use of the mark is likely to cause consumer confusion. *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The Court considers seven factors in assessing a likelihood of consumer confusion: 1) type of mark, 2) similarity of marks, 3) similarity of the products the marks represent, 4) similarity of the parties' trade channels and customers, 5) similarity of advertising media, 6) Defendant Tender Corporation's intent, and 7) actual confusion. *Id.* Of these factors, the type of mark and evidence of actual confusion are the most important in the Eleventh Circuit. *Dieter v. B&H Indus.*, 880 F.2d 322, 326 (11th Cir. 1989) (internal citation omitted).

Tender claims that there is an absence of a genuine issue of material fact on the factors relating to Tender's intent and actual confusion and that the dearth of evidence on these factors requires the Court to grant summary judgment in its favor. The Court will evaluate Tender's argument in light of the evidence presented and the other factors that must be considered in conducting a likelihood of confusion analysis.

Classifying the type of mark allows the Court to determine whether the mark is strong or weak. *Id.* (internal citation omitted). The stronger the mark, the greater the scope of protection. *Id.* Conversely, weaker marks receive less trademark protection. *Id.* There are four types of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. *Id.* (internal citation omitted). The categories "are based on the relationship between the name and the service or good it describes."[5]

---

[5] In *Frheling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999), the Eleventh Circuit explained the framework for evaluating different categories of marks:

Generic marks are the weakest and not entitled to protection–they refer to a class of which an individual service is a member (e.g., "liquor store" used in conjunction with the

In the instant case, the Afterburn trademark could be categorized as either descriptive or suggestive.  The Afterburn mark conjures up the image of a product to use after receiving a sun burn which would demonstrate the quality of the product in a descriptive sense.  On the other hand, the Afterburn mark does not exactly describe the nature of the product and could be categorized as a weak suggestive trademark.

Regarding the similarity of the marks and products that the marks represent, the Afterburn mark is identical, and both Tender and Sun Protection use the mark to sell skin care products.  Examining the similarity of the trade channels, the parties argue that Tender and Sun Protection advertise their products, at least in part, to the same market..  In terms of the advertising media factor, Sun Protection and Tender both use the internet to market their products.  Regarding Tender's intent in using the Afterburn mark, it has been shown that Tender used the mark in conjunction with statistical information that was conveyed by Tender's representatives to retailers.  However, because it is unclear how the statistical information that was given to retailers, Tender's customers, through Tender's representatives was used or intended to be used, there is an issue of fact as to whether Tender was or was not attempting to capitalize on Sun Protection's business reputation.  Regarding the final factor, Knorr's testimony that Sun Protection received complaints of consumer confusion is admissible as to the element of actual confusion.

---

sale of liquor).  (internal citation omitted).  Descriptive marks describe a characteristic or quality of an article or service (e.g., "vision center" denoting a place where glasses are sold).  (internal citation omitted).  Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive.  (internal citation and quotations omitted).  For instance, "penguin" would be suggestive of refrigerators.  (internal citation omitted).  Arbitrary marks are the strongest of the four categories.  (internal citation omitted).

*Id.* at 1335-36.

Because the marks, services, advertising media, and consumer base are identical and because there is evidence of consumer confusion, the Court finds that there is a genuine issue of material fact as to the likelihood of confusion making summary judgment inappropriate.

### *4. Tender's Argument that Sun Protection's Claim for Deceptive and Unfair Trade Practices Must be Dismissed for Failure to Establish Injury or Damages*

Tender's argument regarding Sun Protection's claim under Florida's Deceptive and Unfair Trade Practices (FDUPTA) is two fold.  First, Tender argues that the FDUPTA count must be dismissed because it is based entirely upon the infringement of the Afterburn mark and that there is an absence of evidence in the record demonstrating a genuine issue of material fact as to whether Tender engaged in trademark infringement.  Second, Tender claims that in order for Sun Protection to obtain relief under FDUTPA, Sun Protection must demonstrate that it was aggrieved by an act that amounts to a violation of the statute.  In other words, Tender asserts that Sun Protection must prove actual injury or damages in order to entitled to relief under Sections 501.211(1) and 501.211(2).  The Court will examine each of these arguments in turn.

The Court has already found that there is a genuine issue of material fact as to whether there is a likelihood of confusion in Tender's use of the Afterburn mark.  Therefore, Tender's argument that the FDUTPA claim must be dismissed on the grounds that there is an absence of evidence in the record demonstrating a genuine issue of material fact as to whether Tender engaged in trademark infringement is without merit.

In order to be entitled to relief under Sections 501.211(1) and 501.211(2), Sun Protection must meet several elements.  Under Section 501.211(1), Sun Protection must demonstrate that it was aggrieved by an act or practice that constitutes a "violation of this part."  *See* FLA. STAT. § 501.211(1).

Engaging in trademark infringement is an unfair and deceptive trade practice that constitutes a "violation of this part." *Laboratorios Roldan v. Tex Int'l, Inc.*, 902 F.Supp. 1555, 1569-70 (S.D. Fla. 1995) (explaining that intentionally palming off or passing off products is the type of behavior which FDUTPA was meant to protect against).  Furthermore, Sun Protection was aggrieved by this violation because the record demonstrates that consumer confusion has been a threat to and undermined the credibility of Sun Protection's business and has led to lost sales and lost profits.  (Doc. No. 25, Ex. 8, "Knorr Affidavit," ¶¶ 4, 5, 6).

Under Section 501.211(2), Sun Protection must demonstrate that it "suffered a loss" as a result of a "violation of this part" in order to recover actual damages.  *See* FLA. STAT. § 501.211(2).  The record reflects a genuine issue of material fact as to each of these elements because the trademark infringement constitutes a "violation of this part," and the lost business and lost profits constitute a loss despite the fact that the specific dollar value of the loss has not yet been demonstrated.

Because there is a genuine issue of material fact as to whether Tender infringed on Sun Protection's trademark and because there are issues of fact in the record regarding whether Sun Protection suffered a loss and was aggrieved as a result of a violation of FDUTPA, the Court finds that Tender's argument that the FDUTPA count must be dismissed due to a lack of evidence on the issues of injury and damages is without merit.

In sum, after reviewing the papers filed in this case, the Court is left with the inescapable conclusion that the record is replete with genuine issues of material fact making the entry of summary judgment improper.

## Conclusion

Based on the foregoing, the Court rules as follows:

1.      Defendant Tender Corporation's Motion to Strike Plaintiff Sun Protection's Response

in Opposition to Defendant Tender Corporation's Motion for Summary Judgment is

**GRANTED IN PART** and **DENIED IN PART** in accordance with this Order.  (Doc.

No. 26).  That portion of the Motion to Strike which is an unauthorized reply to Plaintiff

Sun Protection Factory, Inc.'s Response to Defendant Tender Corporation's Motion for

Summary Judgment will not be considered.

2.      Defendant Tender Corporation's Motion for Summary Judgment is **DENIED**.  (Doc.

No. 24).

3.      Defendant Tender Corporation's Request for Oral Argument on Motion for Summary

Judgment is **DENIED**.  (Doc. No. 22).


**DONE** and **ORDERED** in Chambers in Orlando, Florida on October _7th___, 2005.


PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT



Copies furnished to:

Counsel of Record